```
            UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF FLORIDA
                 FORT MYERS DIVISION
```

AARON K. MARSH,

               Plaintiff,

vs.                                    Case No. 2:02-cv-434-FtM-29DNF

KATHLEEN KEARNEY, GREGORY VENZ, DEPARTMENT OF CHILDREN FAMILIES AND SERVICES, MS. LIANCO, WACKENHUT SOUTH BAY CORRECTIONAL CIVIL DETENTION UNIT MEDICAL DEPARTMENT, DR. ROBERT BRIODY, LISA CONWAY, DR. VICTOR PERRONE, DR. ALBERT MACHADO, MS. TIERNEY, MARY FENDICK, MS. CAMPBELL, MS. WISE, MS. LANCY, NURSE GORDON, LIBERTY BEHAVIORAL HEALTHCARE CORP., FLORIDA CIVIL COMMITMENT CENTER MEDICAL DEPARTMENT, DR. HERBERT. CASKEY, President, DR. FNU HAYES, Medical Doctor, FNU HARRELL, Medical Nurse, FNU THOMPSON, Medical Nurse, FNU FRAME, Medical Nurse and DONNA L. HOWELL, Investigations

               Defendants.
_____

**ORDER**

**I.**

This matter comes before the Court On October 24, 2004, upon periodic review of the file and Plaintiff's Amended Complaint (Doc. #20). Plaintiff, Aaron K. Marsh (Plaintiff or Marsh), at the time of the filing of his Amended Complaint was a civil detainee awaiting a civil commitment trial pursuant to Fla. Stat. §394.910 ("Jimmy Ryce Trial") and was confined at the Florida Civil Commitment Center ("FCCC"), which is operated by Liberty Behavioral

Healthcare, Inc.[1]  Plaintiff's Amended Complaint alleges constitutional violations for the failure to provide Plaintiff adequate medical care for his knee and ankle while he confined at South Bay Correctional Institution and the FCCC.  Plaintiff in his Amended Complaint states that he has filed a previous lawsuit in the United Stated District Court, Southern District of Florida, "dealing with the same or similar facts involved in this action" in the "Case No. 02-20704." Amended Complaint, page 3, ¶1.  Plaintiff further acknowledges that his action in that matter addressed "the Florida Civil Commitment Center Medical Department and Defendants'" failure to provide Plaintiff "adequate medical care and treatment to his right knee injury and swelling ankles." Id. ¶3.  Plaintiff points out that the action was "dismissed for failure to state a claim."  The Court has throughly reviewed the file in Plaintiff's previous action and notes that not all Defendants are identical. Additionally, Plaintiff initiated this action subsequent to the Court's dismissal without prejudice of Plaintiff's action in Case No. 02-20704.  Consequently, the Court reviews Plaintiff's Amended Complaint in this action anew.

Plaintiff's Amended Complaint consists of 30 type written pages with over 100 separate averments.  Many of the averments

---

[1] Plaintiff was transferred from the FCCC to the DeSoto County Jail on January 16, 2004.  Plaintiff pled *nolo contendere* to criminal charges on October 24, 2004, and is now in the custody of the Florida Department of Corrections and confined at Metro West Detention Center located in Miami, Florida. See Plaintiff's Change of Address filed in Case No. 2:02cv599 (Doc. #137).

contain superfluous information, reference Florida statues and administrative regulations, or are based on conjecture. The thrust of Plaintiff's Amended Complaint is that Plaintiff contends that the Defendants acted with deliberate indifference in connection with their medical treatment of his knee and ankle, which allegedly was injured when another detainee fell on Plaintiff's knee on September 12, 2001 while Plaintiff was at South Bay Correctional. Plaintiff was transferred to the FCCC in October 2001. Additionally, Plaintiff generally claims that the use of restraints to transport him to outside appointments and court proceedings constitutes cruel and unusual punishment. See *infra,* page 18.

The following is a chronological summary of Plaintiff's medical treatment as set forth in his Amended Complaint:

> September 2001 - Plaintiff examined by Defendant Dr. Lianco at South Bay, who prescribed Plaintiff 400mg ibuprofen every 6 hours, an ice pack and recommended bed rest for Plaintiff.  Amended Complaint, Page 7, ¶3.
>
> November 2001 - Plaintiff examined by Dr. Perrone, the Chief Health Officer at the FCCC, who prescribed anti[2]-inflammatory  pills. Id. Page 8, ¶10.
>
> January 16, 2002 - Plaintiff transported to DeSoto Memorial Hospital for an x-ray of his knee. Plaintiff was subsequently advised later in January that his x-ray results revealed "no injuries to the bones in the knees." Specifically, the radiology diagnostic report found "the bone contours and articular relationships are intact. There is no fracture, foreign body, or evidence of a joint effusion."  The conclusion of the report further found "the right knee plain films are within normal limits."  Id. Pages 9 and 12, ¶16 and ¶25, respectively.

---

[2]Plaintiff claims he was prescribed "inflammatory pills" but acknowledges the pills were for his "massive swelling."

January 17, 2002 - Plaintiff advised by Nurses Lancy and Tierney that "there is nothing wrong with your knee because x-rays show no injuries to the bones in the knee. Everything is O.K." Id. Page 9, ¶16.

January 24, 2002 - Plaintiff prescribed Motrin every four hours as needed for pain. Id. Page 10, ¶17.

February 22, 2002 - Plaintiff examined by Dr. Perrone, who ordered Plaintiff a knee brace. Id. Page 10, ¶18.

March 2002 - Plaintiff examined by Dr. Machado, who allegedly recommended that Plaintiff see an Orthopedic Specialist and undergo an MRI and removed knee brace. Id. Page 11, ¶20.

May 16, 2002 - Plaintiff examined by Dr. Machado and issued a knee brace.[3] Id. Page 12, ¶27.

August 14, 2002 - Plaintiff examined by Dr. Machado, who diagnosed Plaintiff with ankle and knee swelling, allegedly recommended that Plaintiff see an Orthopedic Specialist and undergo an MRI, wrote an order for Plaintiff to be issued "pull over knee brace" shoe size 11 with arch support due to pes valgus (flat feet) for ankle swelling, and acne 10 medication. Id. Page 13, ¶31.

September 5, 2002 - Plaintiff requests items prescribed by Dr. Machado and is told by Nurse Conway that "shoe pass has been written, The above prescribed items were not ordered for you on 8/14/02. A EKG and Chest X-ray were ordered and you are scheduled to have both, a knee brace order on 5/16/02 which has already been provided." Id. Page 13, ¶32.

November 7, 2002 - Plaintiff examined by Dr. Hayes, who diagnosed Plaintiff with cartilage damage, cancelled Plaintiff's appointment with Orthopedic Specialists and MRI, recommended Plaintiff for "appropriate knee brace." Id. Page 14, ¶33.

December 6, 2002 - Plaintiff examined by LPN Schultz. Scheduled Plaintiff for exam with Dr. Machado. Id. Page 14, ¶34.

---

[3]Plaintiff complains that he was issued a "knee wrap" and not a "knee stabilizer."

December 11, 2002 - Plaintiff examined by Dr. Machado and scheduled for examination with Orthopedic Specialist and an MRI for "right knee injury, ankles, and right hip area." Id. Page 14, ¶35.

December 23, 2002 - Plaintiff transported to DeSoto Memorial Hospital and knee and ankles are examined by technologist, but not Plaintiff's hip. Plaintiff advises technologist to examine hip. Technologist calls FCCC and told by Nurse Conway only knee and right ankle. Id. Page 14, ¶36.

January 1, 2003 - Plaintiff met with Dr. Machado who advised Plaintiff that MRI revealed "fluid in right knee, and possible damage (tear) to medial, and lateral collateral ligaments, ankle normal." Specifically the diagnostic imaging report finds "Impression: 1. Small Right Knee Effusion. 2. Borderline Appearance for Lateral Meniscal Tear."[4] Plaintiff further advised Dr. Machado that no MRI was performed on right hip. Dr. Machado agreed to schedule Plaintiff for hip x-ray. Id. Page 15, ¶38.

January 9, 2003 - Plaintiff transported from FCCC and underwent x-ray of right hip at Rads Mobile X-ray & Digital Imaging Radiology. Id. Page 15, ¶40.

February 4, 2003 - Plaintiff met with Psychologist Dr. Schadell and showed results from hip x-ray that revealed "Impression, Minimal early degenerative disease involving hip joint and sacroiliac joint. No displaced fracture or subluxation." Id. Page 15, ¶41.

March 12, 2003 - In response to Plaintiff's request to see Orthopedic Specialist, Plaintiff advised "Ms. Conway and Ms. Luitengerger report you on the list to be seen by Orthopedic Specialist. However, it has been difficult locating a specialist who will take new patients. Once located you will be scheduled. In the meantime, feel free to complete a sick call slip to see Dr. Machado as needed." Id. Page 16, ¶44.

---

[4] Plaintiff refers the Court to "Exhibit 3." There are no exhibits attached to Plaintiff's Amended Complaint. The Court has reviewed the exhibits attached to Plaintiff's Complaint (Doc. #1). The Court, however, did not locate the diagnostic report in the exhibits to Plaintiff's Complaint.

March 14, 2003 - Plaintiff seen in medical by Dr. Machado and Nurse Ferrell in response to March 13, 2004 request. Plaintiff prescribed Naprocin, a pain medication for knee and hip, and Benzoyl peroxide Gel USP 5, Alcohol Pads for acne. Plaintiff advised by Nurse Ferrell that Orthopedic Specialist in DeSoto County "refuse to provide Plaintiff Mr. Marsh medical care and treatment . . . because Plaintiff is at the FCCC." Id. Page 17, ¶46. Plaintiff was prescribed pain medication every 12 hours. Id. Page 19, ¶53.

March-April 2003 - Plaintiff makes various requests to medical to increase his pain medications, which are denied. Id. Page 20, ¶60.

April 14, 2003 - Plaintiff given 7:45 am pain medication and at 11 am complains of pain. At 11:45 am Plaintiff administered Ibuprofen and requested a medical pass to see Dr. Machado. That same day, at 7:45 pm, Plaintiff called to medical and told by one of the Nurses (name unknown) that Plaintiff is on a list to see an outside specialist but "no doctors in the area of DeSoto County want to accept patients at the FCCC." Plaintiff was further advised that Dr. Machado refused to increase Plaintiff's pain medication to three time a day. Id. Pages 19-20, ¶¶55-61.

May 7, 2003 - Plaintiff transported for examination by Dr. Robert Massam, an Orthopedic Specialist located in Sebring, Florida. Dr. Massam reviewed Plaintiff's x-rays, MRI and reports for his knee, ankle and hand but was unable to review the x-ray of Plaintiff's hip because it was not provided. Dr. Massam's findings are as follows: "knee reveals what appears to be a medial collateral ligament injury and an anterior cruciate ligament injury, both of those. . . he is in need of an anterior cruciate inspection and possible partial menisectomy. I think it would do well to recommend an arthroscopy for diagnosis and treatment." Additionally Plaintiff alleges that Dr. Massam recommended Plaintiff a "Neoprene Knee Brace." Id. Page 21, ¶65.

June 10, 2003 - Plaintiff scheduled for surgery, which was rescheduled to July 15, 2003, allegedly due to Department of Corrections "transport problems." Id. Page 23, ¶71.

June 17, 2003 - Plaintiff submitted a Sick Call Slip to Medical as follows:

> **Naprosyn 500 mg** for the pain in my right hip, **Knee Brace** that was order by my Orthopedic Specialist to support my knee while walking or exercises, **X-rays or MRI** to my right hip for the Orthopedic Specialist for further medical care and treatment to my right hip injury, **Retinoic Acid** for Pseudofolliculitis (razor bumps), **Benzoyl Peroxide** that **Dr. Machado** ordered me for my acne and razor bumps, **Aids Test** because six months has went by since my last aids test that were negative, and because I don't know what **Ms. Schultz** stuck me with on my last lab testing in which she left an [sic] bruise on the inside of my right elbow, **Surgery** to remove a **painful cyst** on my **right forearm** that **Dr. Machado** is aware of, <u>I do not want knee surgery until my **right hip** has been adequately medically treated first</u> because now I'm having more pain and problems with my hip, and Notice: I don't want any nurse interfering with Dr. Machado consultation with me to deny me adequate medical care and treatment.

Id. Pages 25-26, ¶81 (bold emphasis in original; underlined emphasis supplied).

June 18, 2003 - Plaintiff received Sick Call Slip back from Nurse Campbell unsigned and undated. Id. Page 26, ¶82.

June 26, 2003 - Plaintiff was issued the Neoprene Knee Brace recommended by Dr. Massam. Id. Page 27, ¶85.

July 14, 2003 - Plaintiff advised that his July 15, 2004 surgery cancelled. Plaintiff claims the surgery was cancelled by "Nurse Conway, Nurse Campbell, and other unknown staff in conspiracy for filing this lawsuit." [5] Id. Page 28, ¶88.

**II.**

---

[5] The Court notes that Defendants were not served with any pleadings in this action.

Plaintiff seeks to proceed in this action *in forma pauperis* (Doc. #2). Thus, despite Plaintiff's non-prisoner status[6], the Court is required to review Plaintiff's *pro se* Amended Complaint to determine whether the complaint is frivolous, malicious or fails to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(I)-(iii). In essence, §1915(e)(2) is a screening process, to be applied sua sponte and at any time during the proceedings. See 28 U.S.C. §1915(e)(2). The Court, nonetheless, must read Plaintiff's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972) reh'g denied 405 U.S. 948 (1972); see also Miller v. Stanmore, 636 F.2d 986, 988 (5th Cir. 1981).

A complaint filed in forma pauperis which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Rather, the test for granting a § 1915 dismissal is whether the claim lacks arguable merit either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); see also Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002); Bilal v. Driver, 251 F.3d 1346,(11th Cir. 2001). Additionally, §1915 requires dismissal when the legal theories advanced are "indisputably meritless," Nietzke at 327; when the claims rely on factual allegations which are "clearly

---

[6] The Court recognizes that certain portions of the Prison Litigation Reform Act are not applicable to Plaintiff as a civil detainee. Troville v. Venz, 303 F.3d 1256 (11th Cir. 2002). Nonetheless, 28 U.S.C. Section 1915(e)(2)(B) is not limited to prisoners but applies to all persons proceeding *informa pauperis*. See Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001).

baseless" Denton v. Hernandez, 504 U.S. 25, 32 (1992); when it appears that the plaintiff has little or no chance of success. Bilal, at 1349; when the claims are based solely on conclusory allegations, unwarranted deductions or mere legal conclusions. Wilson v. Henderson, 2005 WL 1677388 (M.D. Fla. 2005) (citations omitted).

In any §1983 action, the initial inquiry must focus on whether the two essential elements to a §1983 action are present:

> (1) whether the person engaged in the conduct complained of was acting under color of state law; and (2) whether the alleged conduct deprived a person of rights, privileges or immunities guaranteed under the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by, Daniels v. Williams, 474 U.S. 327 (1986); Burch v. Apalachee Community Mental Health Services, Inc., 840 F.2d 797, 800 (11th Cir. 1988), aff'd by, Zinermon v. Burch, 494 U.S. 113 (1990).

Duke v. Massey, 87 F.3d 1226, 1231 (11th Cir.), reh'g and suggestion for reh'g en banc denied, 98 F.3d 1355 (11th Cir. 1996); Hale v. Tallapoosa County, 50 F.3d 1579, 1582 (11th Cir. 1995). In addition, plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d at 1059; Swint v. City of Wadley, Ala., 51 F.3d 988 (11th Cir. 1995); Tittle v. Jefferson County Comm'n, 10 F.3d 1535, 1541 n.1 (11th Cir. 1994).

**III.**

At the time Plaintiff filed his Amended Complaint he was detained at the FCCC pending his commitment trail. A person who is civilly committed is in a position analogous to a criminally confined prisoner. See Pullen v. State, 802 So. 2d 1113, 1119 (Fla. 2001)("the curtailment of the fundamental right of liberty is implicated in both criminal proceedings and involuntary civil commitments"). Residents at the FCCC who are civilly committed are subject to internal regulations much like those established by the Florida Department of Corrections and are considered "totally confined." See Fla. Stat. § 394.912(11). The Court concludes that persons at the FCCC who are civilly committed have constitutional rights analogous to those possessed by a prisoner. Plaintiff's rights as a detainee arise from the Fourteenth Amendment, though the case law developed with regard to the Eighth Amendment prohibitions against cruel and unusual punishment is analogous. Cook ex. rel Estate of Tessier v Sheriff of Monroe County Fla., 402 F.3d 1092, 1115 (11th Cir. 2005). See also Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985)("In regard to providing pretrial detainees with such basic necessities as food, living space, and medical care, the minimum standard allowed by the due process clause is the same as that allowed by the Eighth Amendment for convicted persons.").

In order to state a claim for a violation under the Eighth Amendment, Plaintiff must show that public officials acted with

deliberate indifference to Plaintiff's serious medical needs. Estelle V. Gamble, 429 U.S. 97 (1976); Farrow v. West, 320 F.3d 1235 (11th Cir. 2003). Thus, a plaintiff first must show that he had an "objectively serious medical need" Id. (citing Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000); and, second that the official acted with an attitude of "deliberate indifference" toward rendering treatment to the serious medical need. Farrow, Id. (Quoting Farmer v. Brennan, 511 U.S. 825 (1994). Deliberate indifference is a state of mind more egregious and culpable than mere negligence. Estelle, 429 U.S. at 104-106. In fact, even gross negligence does not satisfy the "sufficiently culpable state of mind" standard. Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004). Thus, "medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Faison v. Rosado, 129 Fed.Appx.490, 491 (11th Cir. 2005) (quoting Harris v. Thigpen, 941 F.2d 1495, 1501 (11th Cir.1991)).

The course of treatment chosen by a medical official is "a classic example of a matter for medical judgment." Estelle, 429 U.S. at 107. Thus, no constitutional violation exists where an inmate and prison medical official merely disagree as to the proper course of medical treatment. Id. at 106. Classic examples of matters for medical judgment include whether an x-ray, or additional diagnostic technique or form of treatment are indicated. Id. at 107.

An inmate who complains that delay in medical treatment rises to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay. Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176 (11th Cir. 1994). Further, the tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Id; Harris v. Coweta County, 21 F. 3d 388, 393-94 (11th Cir. 1994).

**IV.**

**A.   Defendants Wackenhut South Bay Correctional Civil Detainee Unit  Medical Department and Florida Civil Commitment Center Medical Department**

The Court recognizes that a *pro se* complainant is disadvantaged in ascertaining the proper legal entity against whom to bring his claim.  See Brown v. Sikes, 212 F.3d 1205 (11th Cir. 2000). The Medical Departments at South Bay and the FCCC, however, are not "persons" within the meaning of § 1983. Although municipalities are considered persons under § 1983, "the term 'persons' do not encompass municipal departments." Vance v. County of Santa Clara, 928 F.Supp. 993 (N.D. Cal. 1996); see also Stanley v. Delaware County Prison, Medical Dep't, No. 91-1169, 1991 WL 29928, at *1 (E.D. Pa. Feb. 27, 1991) ("The Medical Department at Delaware County Prison is clearly not a person for purposes of 42 U.S.C. § 1983."). Consequently, Amended Plaintiff's Complaint must be dismissed as against these two Defendants.

**B. Defendants Kathleen Kearney, Gregory Venz, Department of Children Families and Services, Liberty Behavioral**

**Healthcare Corporation, Herbert T. Caskey, Dr. Robert Briody, and Lisa Conway**

Plaintiff's Amended Complaint contains no specific allegations against the above-named Defendants, yet alone that they personally participated in the alleged constitutional deprivation. Brown v. Crawford, 906 F.2d 667, 671 (11th Cir.) cert. denied 500 U.S. 933 (1990). It appears that Plaintiff included these Defendants in this action due only to their supervisory positions. Section 1983 claims predicated on respondeat superior theories have been uniformly rejected. Mondell v. Dep't of Social Services, 436 U.S. 658, 690-692, 98 S.Ct. 2018, 2036 (1978); LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993), cert. denied, 510 U.S. 1164, 114 S.Ct. 1189 (1994). There are no allegations which would support supervisory liability. Neither does Plaintiff's Amended Complaint contain any allegations of a policy, custom or practice on the part of any of the Defendants that was the "moving force" behind any other Defendants' alleged misconduct. Board of County Commissioners v. Brown, 117 S.Ct. 1382, 1388 (1997), see also Jones v. Cannon, 174 F.3d 1271, 1292 (11th Cir. 1999), Tennant V. Florida,111 F.Supp.2d 1326 (S.D.Fla. 2000). Consequently, the Court finds Plaintiff's Amended Complaint fails to state a constitutional claim any of the above identified Defendants.

**C.   Defendant Howell**

Defendant Howell is "an investigator for the State of Florida Agency for Health Care Administration." Amended Complaint, Page 5,

¶ I. Plaintiff claims Defendant Howell "failed to investigate Plaintiff's complaint of the medical negligence, and misconduct of the medical staff" at the FCCC causing Plaintiff "further injuries to his right hip." Id. In particular, Plaintiff sent Defendant Howell a "Notice Intent To Suit Complaint" to which Defendant apparently took no action. The Court cannot conceive of any constitutional violation committed by Defendant Howell based upon this averment in the Amended Complaint. Moreover, while the Eleventh Circuit recognizes a cause of action for failing to conduct a constitutionally sufficient investigation if defendant is arrested as a result of the investigation, Kingsland v. City of Miami, 382 F.3d 1220, 1228-31 (11th Cir. 2004), the investigation of which Plaintiff complains did not result in his arrest but rather concerns his perceptions of sexual misconduct by the medical staff at the FCCC. Accordingly, the claims asserted against Defendant Howell will be dismissed.

**D. Defendants Doctors Lianco, Perrone, Machado, and Haymes, and Nurses Tierney, Fendick, Campbell, Wise, Lancy, Gordon, Farrell, Thompson, and Frame**

Plaintiff claims, *inter alia*, that the above-named Defendants failed "to adequately examine" Plaintiff, failed to "recommend him for an MRI Examination and Orthopedic Specialist," failed to "issue him his medication on time," failed to provide him with the "knee brace" and "cancel[ed] his appointment for surgeries." Amended Complaint, Page 5, ¶¶B-F; Page 6, ¶1; Page 9, ¶11; Page 22, ¶67. Throughout the Amended Complaint, Plaintiff repeatedly describes

Defendants actions as constituting "negligence," "medical malpractice" or "medical negligence." Id. Page 5, ¶¶B, D, F; Page 8, ¶¶7,8,9; Page 13, ¶30; Page 22, ¶69; Page 29, ¶89. Plaintiff additionally describes certain of the Defendants' actions as constituting "deliberate indifference."

The Amended Complaint also sets forth in diary-like detail the various interactions Plaintiff had with each nurse and attributes their failure to immediately address his particular need or request as evidence of their deliberate indifference. Plaintiff suggests that Nurse Fendick refused to call Plaintiff out for sick call in two occasions, instead calling Resident "John Doe" for "sexual activities." Amended Complaint, Page 8, ¶¶6, 7; Page 9, ¶¶14, 15. Nurse Wise and Fendick withheld "residents' medication for their own use." Id. Page 8, ¶8. On January 16, 2002, Nurse Lancy "ignore[d] him" when he "arrived at medical" for his medication "and Nurse Hall had to come out and give him his PRN 600 mg Ibuprofen." Id. Page 9, ¶14. The various named Defendant nurses "refuse to issue Plaintiff his pain medication **when he requested**." (Emphasis added) Id. Page 10, ¶17. Nurse Conway failed to issue the knee brace recommended by Dr. Perrone "that day" and then issued him a "knee wrap" instead of a "knee brace with stabilized support." Id. Page 10, ¶18; Page 12, ¶16. Nurse Ferrell "interfer[ed] with Dr. Machado's counseling Plaintiff." Id. Page 15, ¶39. On March 15, 2003, Nurses Gordon and Wise "never came at Westlaw to hand out medication to. . . Plaintiff" requiring

Plaintiff to report to medical to obtain his 8 pm medication. <u>Id</u>. Pages 17-18, ¶49-50.

Without determining whether Plaintiff's knee problem constitutes a "serious medical condition," the Court finds that none of the above actions allegedly committed by Defendants evidence "deliberate indifference" to Plaintiff. Plaintiff's Amended Complaint at most sets forth a claim for medical malpractice, but falls short of articulating an Eighth or Fourteenth Amendment claim. In fact, by Plaintiff's own admissions (1) he was routinely and consistently seen and examined by medical staff; (2) was prescribed Motrin, ice, bed rest, leg braces, anti-inflammatory medication, and pain medication; (3) was transported off site on at least two occasions to outside medical facilities for further testing and evaluation; (4) was transported and examined by off-site specialists, once located; and (5) was scheduled for surgery. In fact, Plaintiff allegations of medical indifference stem from what Plaintiff perceives as a lack of the quality of the care rendered, not a lack of medical care.

Similarly, Plaintiff's allegations that he was provided a knee wrap, as opposed to a knee brace, relate to the mode of treatment rendered, not a lack of treatment. The fact that Plaintiff was not always afforded immediate attention by the nurses is customary for an institutional setting. Plaintiff acknowledges that his June 2003 surgery was cancelled due to Department of Corrections "transport problems." Amended Complaint, Page 23, ¶71. Further, Plaintiff acknowledges that the June 2003 surgery was rescheduled

for July 15, 2003, but that he advised FCCC staff on June 17, 2003 that he does "not want knee surgery until my right hip has been adequately medically treated first." Id. Pages 25-26, ¶81.

Moreover even if Doctors Lianco, Perrone, Machado and Hayes reached an incorrect diagnosis concerning Plaintiff's knee problem, such a claim sounds more in medical malpractice rather than a conscious disregard or deliberate indifference to a known medical need. Plaintiff's disagreement with the medical officials as to the proper diagnosis of his medical condition, his preferred course of treatment, or the amount of pain medication that Plaintiff desires does not give rise to a constitutional claim. Essentially, Plaintiff contends that more should have been done to properly assess Plaintiff's medical condition. While admittedly such testing, especially if ordered earlier, may have prevented further injury to Plaintiff's knee, such a claim is properly pursued in the state court under Florida's tort statute, not in this Court as a constitutional claim.

## V.

Plaintiff generally claims that on October, 12, 2001 while being transported from South Bay to the FCCC, he was transported in restraints "that cause more suffering to right knee." Amended Complaint, Page 7, ¶4. Similarly, on December 23, 2003, when being transported to DeSoto Memorial Hospital for x-rays, Plaintiff complains that the restraints "cause more inflicting pain and

suffering to Plaintiff's right knee and hip injuries." Id. Page 14, ¶36.

The Court recognizes that Plaintiff's confinement was the result of the trial court's determination that sufficient probable cause exists that Plaintiff is a sexually violent predator as defined by the Jimmy Ryce Act. The Court acknowledges that the Jimmy Ryce Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So.2d 93, 112 (Fla. 2002) (emphasis supplied).

"Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Bell v. Wolfish, 441 U.S. 520, 540 (1979). In determining whether restraints are reasonably related to an institution's interest in maintaining security and order, the Court is mindful of the Supreme Court's warning that

> such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these consideration, courts should ordinarily defer to their expert judgment in such matters. Id. (citations omitted).

Whether plaintiff can show that there is a less restrictive means or a better alternative to the type of restraint is not relevant to an Eighth or Fourteenth Amendment inquiry. Jackson v. Cain, 864 F.2d 1235, 1243 (5th Cir. 1989). Rather, Plaintiff must demonstrate that Defendants "deliberately as punishment or mindlessly, with indifference to [Plaintiff's] humanity" caused the discomfort Plaintiff sustained while he was handcuffed and shackled. Id. Recognizing that "handcuffs and shackles are restraints commonly used on inmates, even those of preferred status," the court found no constitutional violation existed where an inmate alleged "wanton pain" from tightly applied handcuffs, shackles and waist chains, noting the absence of any allegations that "great pain" was "deliberately" inflicted, the restraints were of a type "not customarily used," and the inmate was "deliberately treated maliciously and differently" than others in his position. Id. at 1244.

Plaintiff's Amended Complaint generally complains that the restraints caused him considerable discomfort. Plaintiff does not allege that the restraints were applied deliberately to cause him pain, were applied incorrectly or too tight, were not the type customarily used, or other FCCC residents were not required to be transported in restraints. Although the Court recognizes that Plaintiff may be in pain when wearing the restraints, his claim as stated does not articulate a constitutional violation.

In conclusion, although Plaintiff may have endured pain and discomfort in connection with his knee injury and restraints, his Amended Complaint fails to states a claim with regard to denial of adequate medical care or use of restraints pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

ACCORDINGLY, it is hereby

**ORDERED**:

1. Plaintiff's Amended Complaint is **DISMISSED** without prejudice.

2. The **Clerk of Court** shall: 1) enter judgment accordingly; 2) terminate any pending motions; and 3) close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this __10th__ day of August, 2005.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　JOHN E. STEELE
　　　　　　　　　　　　　　　　　　United States District Judge

SA:   hmk

Copies: All Parties of Record